Gerrit M. Pronske
Texas Bar No. 16351640
Melanie P. Goolsby
Texas Bar No. 24059841
PRONSKE GOOLSBY & KATHMAN, P.C.
15305 Dallas Parkway, Suite 300
Addison, Texas 75001
Telephone: 214.658.6500
Facsimile: 214.658.6509
Email: gpronske@pgkpc.com
Email: mgoolsby@pgkpc.com

**PROPOSED COUNSEL FOR DEBTOR
AND DEBTOR-IN-POSSESSION**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| **In re:** § | |
| § | **CASE NO. 15-40917** |
| **WASH TECHNOLOGIES OF AMERICA** § | |
| **CORP.** § | **CHAPTER 11** |
| § | |
| **Debtor.** § | |

**EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND (II) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDERS**

TO THE HONORABLE BRENDA T. RHOADES
CHIEF UNITED STATES BANKRUPTCY JUDGE:

Wash Technologies of America Corp. (the "Debtor"), debtor and debtor-in-possession, in the above-referenced bankruptcy case, submits this motion (the "Motion") pursuant to Sections 105, 361, 362, 363 and 364 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code"), and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule" or "Bankruptcy Rules"), seeking an order from the Court (i) authorizing the use of cash collateral, if any, pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy

Code and Bankruptcy Rule 4001(b); and (ii) granting adequate protection to the pre-petition secured lenders. In support of this Motion, the Debtor respectfully represents as follows:

## I.   JURISDICTION AND VENUE

1.    The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334(b). This matter is a core proceeding, and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    The statutory bases for relief requested herein are Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rule 4001(b).

## II.   BACKGROUND

3.    On May 18, 2015 (the "Petition Date"), the Debtor filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code. Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtor continues to operate its business and manage its property as a debtor in possession.

4.    No trustee or examiner has been appointed in the Debtor's Chapter 11 bankruptcy proceeding, nor has a creditors' committee or other official committee been appointed pursuant to 11 U.S.C. § 1102.

5.    The Debtor is a Texas corporation formed for the purpose of owning and operating two car wash facilities, one located in Dallas at 1989 W. Northwest Highway (the "Dallas Property") and another located in in Plano at 6100 Coit Road (the "Plano Property"). The Dallas Property consists of a stand-alone, full service car wash. The Debtor has operated a car wash at the Dallas Property since 2011 and employs 1 full-time employee and 4 part-time employees at that location. The Plano Property consists of a convenience store with an attached full service and automatic car wash. The Debtor owns the convenience store building, but leases

it to an affiliated company for its operation. The Debtor has operated a car wash at the Plano Property since 2011 and employs 2 full-time employees and 7 part-time employees at that location.

6.   The Debtor has been involved in costly litigation with John C. Pappas, a former business partner, in Dallas County District Court litigating breach of fiduciary duty, breach of contract, negligence, fraud, and similar related claims. The breaches giving rise to this litigation have caused significant damages to the Debtor's business operations, including the significant ongoing costs of funding the litigation. Additionally, the exceedingly rainy spring in North Texas has directly contributed to the Debtor's immediate cash flow concerns. In an effort to balance cash needs and manage its debts fairly among all creditors, the Debtor determined that this filing was necessary.

### A.   The First United Bank and Trust Company Loan

7.   On or about June 3, 2011, the Debtor executed a commercial promissory note in the original principal amount of Five Hundred Forty-Three Thousand and No/100 Dollars ($543,000.00) (the "FUB Note") for the benefit of First United Bank and Trust Company ("FUB"), 6401 South Custer Road, Suite 2020, McKinney, Texas 75070, whereby FUB agreed to lend funds to the Debtor for the purchase of the Dallas Property. The FUB Note was modified on or about June 3, 2013 and then again on September 3, 2014. As modified, the annual interest rate on the FUB is 7% per annum. In addition to the FUB Note, on or about June 3, 2011, the Debtor also executed that certain Commercial Deed of Trust, Security Agreement, Financing Statement and Assignment of Rents (the "FUB Deed of Trust") for the benefit of FUB, which was acknowledged and incorporated into the September 2014 Modification Agreement. The Debtor believes the current balance on the FUB Note to be approximately $473,953.

**EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND (II) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – Page 3 of 12**

8. Nothing herein constitutes an admission of the existence, validity, priority and/or extent of FUB's lien(s), and specifically whether any post-petition cash constitutes cash collateral. The Debtor reserves the right to amend and/or supplement this Motion.

### B. The Riverbend Bank Real Property Loan

9. On or about August 12, 2013, the Debtor executed a promissory note in the original principal amount of One Million Seventy Two Thousand and No/100 Dollars ($1,072,000.00) (the "Riverbend Real Property Note") for the benefit of Riverbend Bank ("Riverbend"), 2000 Handley Ederville Road, Fort Worth, Texas 76118, whereby Riverbend agreed to lend funds to the Debtor for the purchase of the Plano Property. The annual interest rate on the Riverbend Real Property Note is prime plus 1.5% per annum. In addition to the Riverbend Real Property Note, on or about August 12, 2013, the Debtor also executed that certain Deed of Trust – Security Agreement – Financing Statement (the "Riverbend Deed of Trust") for the benefit of Riverbend. The Debtor believes the current balance on the FUB Note to be approximately $1,019,086.

10. Nothing herein constitutes an admission of the existence, validity, priority and/or extent of Riverbend's lien(s) in connection with the Riverbend Real Property Note, and specifically whether any post-petition cash constitutes cash collateral. The Debtor reserves the right to amend and/or supplement this Motion.

### C. The Riverbend Bank Equipment Loan

11. Also on or about August 12, 2013, the Debtor executed a promissory note in the original principal amount of One Hundred Twenty Eight Thousand and No/100 Dollars ($128,000.00) (the "Riverbend Equipment Note") for the benefit of Riverbend, whereby Riverbend agreed to lend funds to the Debtor for the purchase of carwash equipment. The annual

interest rate on the Riverbend Equipment Note is 5.5% per annum. In connection with the Riverbend Equipment Note, Debtor granted Riverbend a security interest in the carwash equipment and all proceeds and products of the carwash equipment. The Debtor believes the current balance on the FUB Note to be approximately $91,298.

12. Nothing herein constitutes an admission of the existence, validity, priority and/or extent of Riverbend's lien(s) in connection with the Riverbend Equipment Note, and specifically whether any post-petition cash constitutes cash collateral. The Debtor reserves the right to amend and/or supplement this Motion.

### III.    REQUEST FOR USE OF CASH COLLATERAL

13. Cash collateral, is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes proceeds, products, offspring, rents, or profits or property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title." 11 U.S.C. § 363(a).

14. 11 U.S.C. § 363(c)(2) states as follows:

> The trustee may not use, sell or lease cash collateral under paragraph (1) of this subsection unless
>
> (A) each entity that has an interest in such cash collateral consents; or
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

15. To the extent 11 U.S.C. § 363(c)(2) is applicable, the Debtor requires the use of cash created from the use of the real property, equipment, and other personal property (the "Cash

**EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND (II) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – Page 5 of 12**

Collateral") to pay the reasonable and necessary operating expenses, including, but not limited to, the purchase of necessary supplies and materials, routine repair and maintenance expenses, payroll and taxes. The Debtor's use of this Cash Collateral is necessary to preserve and increase the value of the Debtor's collateral and the Debtor's estate for the benefit of all creditors, including FUB, Riverbend, and any other secured creditors purporting to hold an interest in the Debtor's cash collateral.

A.  **GROUNDS FOR RELIEF REQUESTED**

16. Section 363 of the Bankruptcy Code authorizes a debtor to use cash collateral if those having an interest in such cash collateral consent or the court authorizes the use. *See* 11 U.S.C. § 363(c)(2). The use of cash collateral, however, may be prohibited or conditioned, upon proper request, as is necessary to adequately protect any interest in cash collateral. *See* 11 U.S.C. §363(e). The burden to demonstrate that the cash constitutes cash collateral belongs to the party claiming an interest in that cash and is not the Debtor's burden to prove the contrary. *See* 11 U.S.C. § 363(o)(2).

17. A court may authorize the use of cash collateral upon showing that those with an interest in the cash collateral are adequately protected. *See In re Harrington and Richardson, Inc.*, 48 B.R. 431, 433 (Bankr. D. Mass. 1985); *In re Certified Corp.*, 51 B.R. 768, 770 (Bankr. D. Hawaii 1985) ("It is well established that a debtor is entitled to use cash collateral upon proof of adequate protection."). Adequate protection requires examination of the creditor(s)' aggregate collateral position, not simply protection of its lien on cash. Adequate protection may be provided by granting replacement or additional liens "to the extent [that the use of cash collateral] results in a decrease in the value of [an] entity's interest in property." *See* 11 U.S.C. § 361(2). Authorizing a debtor to use cash collateral on an interim basis is appropriate where, as

here, continuing the business as a going concern will cause the generation of future revenues upon which the secured lender is granted replacement liens. *See, e.g., In re Neise, Inc.,* 16 B.R. 600 (Bankr. D. Fla. 1981); *In re Certified Corp.*, 51 B.R. 768 (Bankr. D. Hawaii 1985); *In re Post-Tron Systems, Inc.*, 106 B.R. 345 (Bankr. D.R.I. 1989).

18. By authorizing the Debtor to use cash collateral, the Court will place the Debtor in a position to indirectly fund its operating expenses and to operate as a going concern for the immediate future. The Debtor needs to use cash collateral in order to, *inter alia*, pay its employees, vendors, and meet other on-going business obligations. Without the authority to use Cash Collateral, the Debtor will be unable to fund its business operations in a manner that will allow the Debtor to continue to operate as a going concern, to the detriment of *all* of Debtor's creditors. The failure to allow the Debtor to use Cash Collateral to fund its day-to-day operations would damage not only the Debtor, but also the lenders and the other creditors of the Debtor, including the pool of unsecured creditors.

**B. OFFER OF ADEQUATE PROTECTION AND SUMMARY OF CASH COLLATERAL ORDER**

19. The Debtor has uploaded, in connection with this Motion, a proposed form of the Interim Cash Collateral Order (the "Interim Cash Collateral Order") that authorizes the Debtor's use of Cash Collateral. Attached to this Motion as **Exhibit A** is a proposed 15-day budget of the Debtor's operations that itemizes the use of cash for the next couple of weeks. The budget items set forth therein are necessary to avoid immediate and irreparable harm prior to a final hearing on the Motion. The Debtor proposes that any amounts listed in the attached budget that are not used in any week may be carried over and used by the Debtor in any subsequent week, on a line-item basis.

20. The offer of adequate protection for the Interim and Final Cash Collateral Order is as follows:

    a)     **FUB and Riverbend (collectively, the "Lenders") will be granted replacement liens in cash, subject to a determination by the Court that Lenders hold a fully perfected, enforceable pre-petition lien on cash, with the exceptions and provisions that follow, with the same priority as the Lenders' pre-petition liens, if any, and solely to the extent that the value of Lenders' collateral, on an aggregate basis, diminishes as a result of the use of Cash Collateral authorized by this Court;**

    b)     **The Replacement Liens will not prime any validly attached and properly perfected lien held by a third party on specific property of the Debtor as of the Petition Date;**

    c)     **The Replacement Liens will not attach to chapter 5 actions of the Debtor or the proceeds of the recovery upon such actions;**

    d)     **Except for post-petition cash generated from operations, the Replacement Liens will not attach to any unencumbered property of the Debtor, if any, or the proceeds from any sale of any unencumbered property, and the proceeds from any sale of any unencumbered property shall be deposited into a separate unencumbered account and, absent further order of the Court, shall not be subject to the Replacement Liens;**

    e)     **Any pre-petition cash collateral in such accounts shall be deemed "last out" of such accounts, except to the extent that any expense of the Debtor is surcharged by the Court against such pre-petition cash as allowed by section 506(c) of the Bankruptcy Code;**

    f)     **The Replacement Liens will attach only to the extent that cash used by the Debtor is ultimately determined by the Court to be Cash Collateral of the Lenders;**

    g)     **The Replacement Liens will not apply to any reduction in cash value caused from the payment of an expense that is later surcharged against Lenders' collateral based on Section 506(c) of the Bankruptcy Code;**

    h)     **Subject to the limiting conditions on the Replacement Liens, the Replacement Liens will be binding upon any subsequently appointed chapter 11 or chapter 7 trustee;**

**EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND (II) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – Page 8 of 12**

**i)** **The cash will be used to continue the operations of the Debtor and therefore maintain the going concern value of the aggregate of the Lenders' collateral; as such, the use of cash will be regulated by a pre-approved budget to assure that appropriate operating expenses are being paid and that no inappropriate expense is paid;**

**j)** **The cash will be used in part to maintain insurance on the Debtor's collateral and all other of the Debtor's assets;**

**k)** **The use of Cash Collateral may be terminated by the Court on motion, after notice and hearing, if the Court determines that the Lenders are no longer adequately protected.**

**l)** **Debtor intends to seek a provision in the final Cash Collateral Order providing a carve out for approved estate professionals, including but not limited to, Debtor's counsel, any counsel for a statutorily formed committee, as well as any United States' Trustee Fees.**

21. The Debtor believes that the terms of the proposed Interim and Final Cash Collateral Orders are fair and reasonable under the circumstances. The Debtor asserts that the aggregate value of Lenders' alleged cash collateral will not diminish as a result of the use of cash in this case.

22. Given that the interests of Lenders will be adequately protected, it is in the best interest of the Debtor, its estate, and all of its creditors for the Debtor to be able to continue operations and for the Debtor to be authorized to use Cash Collateral, even without the Lenders' consent.

## V.    NOTICE OF THIS MOTION

23. No Chapter 11 trustee or creditors' committee has been appointed in this case as of the filing of the Motion. Notice of this Motion has been provided to the Office of the United States Trustee, the Lenders, and the twenty largest unsecured creditors, via electronic means and/or via United States First Class Mail, and any parties requesting notice of pleadings, which

the Debtor submits is sufficient notice under the circumstances and that no further notice is necessary.

## VI.    REQUEST FOR RELIEF

24. The Debtor respectfully requests that it be authorized to use cash collateral for the purposes of paying necessary business expenses as allowed by Section 363 of the Bankruptcy Code, and that the Court grant the Lenders replacement liens on post-petition assets, as allowed by Sections 361, 363 and/or 364 of the Bankruptcy Code, consistent with the terms and provisions contained in this Motion. The Debtor requests that this relief be granted on both an interim and final basis. The Debtor asks that the Court authorize it to use cash collateral on a go-forward basis through the life of this case, subject to such use being terminated by further order of this Court upon a finding that the Lenders are no longer adequately protected.

WHEREFORE, PREMISES CONSIDERED, the Debtor respectfully requests the Court (i) authorize the use of Cash Collateral pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rule 4001(b); (ii) grant adequate protection to the pre-petition secured lenders; and (iii) grant such other relief and further relief as the Court may deem proper.

Dated: May 21, 2015.                    Respectfully submitted,

/s/ *Melanie P. Goolsby*
Gerrit M. Pronske
Texas Bar No. 16351640
Melanie P. Goolsby
Texas Bar No. 24059841
PRONSKE GOOLSBY & KATHMAN, P.C.
15305 Dallas Parkway, Suite 300
Addison, Texas 75001
Telephone: 214.658.6500
Facsimile: 214.658.6509
Email: gpronske@pgkpc.com
Email: mgoolsby@pgkpc.com

**PROPOSED COUNSEL FOR DEBTOR
AND DEBTOR-IN-POSSESSION**

**CERTIFICATE OF CONFERENCE**

I, the undersigned, hereby certify that, on May 21, 2015, I attempted to confer with representatives of First United Bank and Riverbend Bank concerning the relief requested herein. To my knowledge, neither institution has retained counsel in the case. As of the time of filing the Motion, neither institution has indicated whether they are opposed to the relief requested herein.

I further certify that I conferred with Timothy O'Neil, trial attorney for the United States Trustee, regarding the relief requested herein. The United States Trustee reserves any and all objections to the Motion after review but is unopposed to an emergency hearing on the Motion.

/s/ *Melanie P. Goolsby*
Melanie P. Goolsby

# CERTIFICATE OF SERVICE

      I, the undersigned, hereby certify that, on May 21, 2015, I caused to be served the foregoing pleading upon the parties on the Service List attached hereto via electronic mail and/or facsimile where available, and/or United States mail, first class delivery, and also via email and facsimile to the institutions below:

| | |
|---|---|
| Riverbend Bank | First United Bank |
| George Chaggaris, President & CEO | Felicia Everidge, Loan Officer |
| 2000 Handley Ederville Road | 6401 South Custer Road, Suite 2020 |
| Fort Worth, Texas 76118 | McKinney, Texas 75070 |
| Email: gchaggaris@riverbendbank.com | Fax: 872-421-8576 |
| | Email: feveridge@firstunitedbank.com |

      */s/ Melanie P. Goolsby*
      Melanie P. Goolsby