Gerrit M. Pronske
Texas Bar No. 16351640
Melanie P. Goolsby
Texas Bar No. 24059841
PRONSKE GOOLSBY & KATHMAN, P.C.
15305 Dallas Parkway, Suite 300
Addison, Texas 75001
Telephone: 214.658.6500
Facsimile: 214.658.6509
Email: gpronske@pgkpc.com
Email: mgoolsby@pgkpc.com

**PROPOSED COUNSEL FOR DEBTOR
AND DEBTOR-IN-POSSESSION**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| **In re:** § | |
| § | **CASE NO. 15-40917** |
| **WASH TECHNOLOGIES OF AMERICA** § | |
| **CORP.** § | **CHAPTER 11** |
| § | |
| **Debtor.** § | |

### DECLARATION OF JON BANGASH IN SUPPORT OF FIRST DAYS MOTIONS

JON BANGASH, pursuant to 28 U.S.C. § 1746, states under penalty of perjury:

1. I am over the age of eighteen (18) years and am competent to testify to the matters set forth herein.

2. I make this Declaration in support of the following motions filed by Wash Technologies of America Corp., the debtor and debtor-in-possession in the above-captioned bankruptcy case (the "Debtor"): (1) the Emergency Motion for an Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b) and (II) Granting Adequate Protection to the Pre-Petition Secured Lenders (the "Cash Collateral Motion"); (2) the Emergency Motion for an Order Authorizing (I) the Debtor to Pay Pre-Petition Wages and (II) Banks to Honor

and Pay Checks Issued to Pay Pre-Petition Wages and Withholdings (the "Employee Wage Motion"); and (3) the Motion for Emergency Hearing on First Day Matters (the "Motion for Emergency Hearing").

3. I am the President and Director of the Debtor and the designated representative of the Debtor in this bankruptcy case.

4. On May 18, 2015 (the "Petition Date"), the Debtor filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code. Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtor continues to operate its business and manage its property as a debtor in possession.

5. No trustee or examiner has been appointed in the Debtor's Chapter 11 bankruptcy proceeding, nor has a creditors' committee or other official committee been appointed pursuant to 11 U.S.C. § 1102.

6. The Debtor is a Texas corporation formed for the purpose of owning and operating two car wash facilities, one located in Dallas at 1989 W. Northwest Highway (the "Dallas Property") and another located in in Plano at 6100 Coit Road (the "Plano Property"). The Dallas Property consists of a stand-alone, full service car wash. The Debtor has operated a car wash at the Dallas Property since 2011 and employees 1 full-time and 4 part-time employees at that location. The Plano Property consists of a convenience store with an attached full service and automatic car wash. The Debtor owns the convenience store building, but leases it to an affiliated company for its operation. The Debtor has operated a car wash at the Plano Property since 2011 and employs 2 full-time employees and 7 part-time employees at that location.

7. The Debtor has been involved in costly litigation with John C. Pappas, a former business partner, in Dallas County District Court litigating breach of fiduciary duty, breach of

contract, negligence, fraud, and similar related claims. The breaches giving rise to this litigation have caused significant damages to the Debtor's business operations, including the significant ongoing costs of funding the litigation. Additionally, the exceedingly rainy spring in North Texas has directly contributed to the Debtor's immediate cash flow concerns. In an effort to balance cash needs and manage its debts fairly among all creditors, the Debtor determined that this filing was necessary.

**The Cash Collateral Motion**

8. On or about June 3, 2011, the Debtor executed a commercial promissory note in the original principal amount of Five Hundred Forty-Three Thousand and No/100 Dollars ($543,000.00) (the "FUB Note") for the benefit of First United Bank and Trust Company ("FUB"), 6401 South Custer Road, Suite 2020, McKinney, Texas 75070, whereby FUB agreed to lend funds to the Debtor for the purchase of the Dallas Property. The FUB Note was modified on or about June 3, 2013 and then again on September 3, 2014. As modified, the annual interest rate on the FUB is 7% per annum. In addition to the FUB Note, on or about June 3, 2011, the Debtor also executed that certain Commercial Deed of Trust, Security Agreement, Financing Statement and Assignment of Rents (the "FUB Deed of Trust") for the benefit of FUB, which was acknowledged and incorporated into the September 2014 Modification Agreement. The Debtor believes the current balance on the FUB Note to be approximately $473,953.

9. On or about August 12, 2013, the Debtor executed a promissory note in the original principal amount of One Million Seventy Two Thousand and No/100 Dollars ($1,072,000.00) (the "Riverbend Real Property Note") for the benefit of Riverbend Bank ("Riverbend"), 2000 Handley Ederville Road, Fort Worth, Texas 76118, whereby Riverbend agreed to lend funds to the Debtor for the purchase of the Plano Property. The annual interest

rate on the Riverbend Real Property Note is prime plus 1.5% per annum. In addition to the Riverbend Real Property Note, on or about August 12, 2013, the Debtor also executed that certain Deed of Trust – Security Agreement – Financing Statement (the "Riverbend Deed of Trust") for the benefit of Riverbend. The Debtor believes the current balance on the FUB Note to be approximately $1,019,086.

10. Also on or about August 12, 2013, the Debtor executed a promissory note in the original principal amount of One Hundred Twenty Eight Thousand and No/100 Dollars ($128,000.00) (the "Riverbend Equipment Note") for the benefit of Riverbend, whereby Riverbend agreed to lend funds to the Debtor for the purchase of carwash equipment. The annual interest rate on the Riverbend Equipment Note is 5.5% per annum. In connection with the Riverbend Equipment Note, Debtor granted Riverbend a security interest in the carwash equipment and all proceeds and products of the carwash equipment. The Debtor believes the current balance on the FUB Note to be approximately $91,298.

11. An emergency hearing on the Cash Collateral Motion is necessary so that the Debtor may obtain authority to use cash generated by operation of the Properties in order to, *inter alia*, pay its employees, vendors, and meet other on-going business obligations. A proposed 15-day cash budget is attached to the Cash Collateral Motion as **Exhibit A** and shows that the Debtor proposes to use cash collateral only for expenditures that are necessary to avoid immediate and irreparable harm to the Debtor during the interim period. Without the authority to use Cash Collateral, the Debtor will be unable to fund its business operations in a manner that will allow the Debtor to continue to operate as a going concern, to the detriment of *all* of Debtor's creditors.

12. Payment of the items on the budget is necessary to prevent immediate and irreparable harm to the Debtor's estate, as well as preserve and increase the value of the Property and the

Debtor's estate for the benefit of all creditors. A denial of the use of cash collateral for the items set out on the interim budget would render the Debtor unable to fund its day-to-day operations, result in immediate and irreparable harm to the reputation, goodwill and public confidence in the Debtor leading to a drastic loss in value as a going concern in a highly competitive business. Consequently, a denial of the use of cash collateral would negatively affect not only the Debtor, its employees, and customers, but also all of the Debtor's creditors.

13. The Debtor has uploaded, in connection with this Motion, a proposed form of the Interim Cash Collateral Order (the "Interim Cash Collateral Order") that authorizes the Debtor's use of Cash Collateral. Attached to the Cash Collateral Motion as **Exhibit A** is a proposed 15-day budget of the Debtor's operations that itemizes the use of cash for the next couple of weeks. The budget items set forth therein are necessary to avoid immediate and irreparable harm prior to a final hearing on the Motion. The Debtor proposes that any amounts listed in the attached budget that are not used in any week may be carried over and used by the Debtor in any subsequent week, on a line-item basis.

14. The offer of adequate protection for the Interim and Final Cash Collateral Order is as follows:

    a) **FUB and Riverbend (collectively, the "Lenders") will be granted replacement liens in cash, subject to a determination by the Court that Lenders hold a fully perfected, enforceable pre-petition lien on cash, with the exceptions and provisions that follow, with the same priority as the Lenders' pre-petition liens, if any, and solely to the extent that the value of Lenders' collateral, on an aggregate basis, diminishes as a result of the use of Cash Collateral authorized by this Court;**

    b) **The Replacement Liens will not prime any validly attached and properly perfected lien held by a third party on specific property of the Debtor as of the Petition Date;**

**c)** **The Replacement Liens will not attach to chapter 5 actions of the Debtor or the proceeds of the recovery upon such actions;**

**d)** **Except for post-petition cash generated from operations, the Replacement Liens will not attach to any unencumbered property of the Debtor, if any, or the proceeds from any sale of any unencumbered property, and the proceeds from any sale of any unencumbered property shall be deposited into a separate unencumbered account and, absent further order of the Court, shall not be subject to the Replacement Liens;**

**e)** **Any pre-petition cash collateral in such accounts shall be deemed "last out" of such accounts, except to the extent that any expense of the Debtor is surcharged by the Court against such pre-petition cash as allowed by section 506(c) of the Bankruptcy Code;**

**f)** **The Replacement Liens will attach only to the extent that cash used by the Debtor is ultimately determined by the Court to be Cash Collateral of the Lenders;**

**g)** **The Replacement Liens will not apply to any reduction in cash value caused from the payment of an expense that is later surcharged against Lenders' collateral based on Section 506(c) of the Bankruptcy Code;**

**h)** **Subject to the limiting conditions on the Replacement Liens, the Replacement Liens will be binding upon any subsequently appointed chapter 11 or chapter 7 trustee;**

**i)** **The cash will be used to continue the operations of the Debtor and therefore maintain the going concern value of the aggregate of the Lenders' collateral; as such, the use of cash will be regulated by a pre-approved budget to assure that appropriate operating expenses are being paid and that no inappropriate expense is paid;**

**j)** **The cash will be used in part to maintain insurance on the Debtor's collateral and all other of the Debtor's assets;**

**k)** **The use of Cash Collateral may be terminated by the Court on motion, after notice and hearing, if the Court determines that the Lenders are no longer adequately protected.**

**l)** **Debtor intends to seek a provision in the final Cash Collateral Order providing a carve out for approved estate professionals,**

    **including but not limited to, Debtor's counsel, any counsel for a statutorily formed committee, as well as any United States' Trustee Fees.**

  15. The Debtor believes that the terms of the proposed Interim and Final Cash Collateral Orders are fair and reasonable under the circumstances. The Debtor asserts that the aggregate value of Lenders' alleged cash collateral will not diminish as a result of the use of cash in this case.

  16. Given that the interests of Lenders will be adequately protected, it is in the best interest of the Debtor, its estate, and all of its creditors for the Debtor to be able to continue operations and for the Debtor to be authorized to use Cash Collateral, even without the Lenders' consent.

  17. To my knowledge, neither FUB nor Riverbend have retained counsel in this bankruptcy case. I have been in communication with representatives from both banks since the Petition Date and have given them notice of the filing of the bankruptcy case and the Debtor's request to use cash collateral. As of the time of filing, however, neither FUB nor Riverbend have indicated whether they are opposed to the relief requested in the Cash Collateral Motion.

  **The Employee Wage Motion**

  18. Between the Dallas Property and the Plano Property, the Debtor currently employs 14 salaried and/or hourly employees (collectively the "Employees"). The Employees perform a variety of critical functions, including maintenance of the equipment, providing car wash services to Debtor's customers, and management of the Debtor's point of sale system. The Employees' skills and their specialized knowledge and understanding of the Debtor's infrastructure and operations are essential to the Debtor's continuing operations and to its ability to reorganize.

19. The Employees are owed pre-petition wages. Attached to the Employee Wage Motion as **Exhibit A** is a schedule reflecting the Employees with pre-petition wages due. The pre-petition pay period for which the employees are yet to be paid is from May 7, 2015 through and including May 17, 2015 (the "Pre-Petition Pay Period"). Payroll is paid on a weekly basis, and the next scheduled payroll date is May 22, 2015.

20. An emergency hearing on the Employee Motion is necessary so that the Debtor may timely make payroll on May 22, 2015. Any delay or failure to pay wages, salaries, benefits, and other similar items would irreparably impair the employees' morale, dedication, confidence, and cooperation, adversely impacting the Debtor's relationship with its employees at a time when the employees' support is critical to the success of the Debtor's Chapter 11 case. At this early stage, the Debtor simply cannot risk the substantial damage to its business that would inevitably attend any decline in its employees' morale.

21. The relief sought in the Employee Motion is necessary to prevent immediate and irreparable harm to the Debtor's estate because, absent an order granting the relief requested herein, the employees will suffer undue hardship and, in many instances, serious financial difficulties, as the amounts in question are needed to enable certain of the employees to meet their own personal financial obligations. Without the requested relief, the stability of the Debtor will be undermined, perhaps irreparably, by the distinct possibility that otherwise loyal employees will seek other employment alternatives.

22. To the extent that I discover any additional facts bearing on this Declaration, I will supplement this Declaration and disclose those facts to the Court at its earliest opportunity.

SIGNED AND SWORN TO UNDER THE PENALTIES OF PERJURY this 21st day of May, 2015.

/s/ Jon Bangash
Jon Bangash
